Opinion by
Henderson, J.,
It is the law of this state that the title of chattels only passes from the owner by his voluntary act or by operation-of law. Possession merely, without title, does not give property, and the holder cannot transfer a better title than he has, himself. There is an exception, to be sure, to the general rule, applicable to checks, promissory notes, bank bills and other money as to which the necessities of commerce give such a property to the holder that he may transfer a good title. They pass by delivery, because without this quality their usefulness would cease to a large extent and the current of trade be much obstructed. Another exception exists where the owner voluntarily confers upon another an apparent right of property, either as owner or agent for sale. In the latter class of cases the question is generally not one of title, but of the right of recovery, the equitable doctrine of estoppel frequently arising to prevent the owner from asserting an unquestioned title against a good faith purchaser. Illustrations of this are found in the case of one who gives to another such evidence of the right of disposition as usually goes with such authority according to the usages of trade or the general understanding; or where one holds out another as having authority to sell his -goods, in which cases the law will not permit the real owner to recover from one who in good faith purchased the property relying on the appearance of a right to sell on the part of the holder, arising from the voluntary conduct of the owner. What, then, is the application of this principle to the question before us? That the plaintiff was the owner of the property up to the time it was sold at auction is not questioned. The uncontradicted evidence is that it was given to her many years before by her mother; that when she was married and went to the west she left it with other articles of personal property with her father in his home in Germantown; that it remained there until her father’s death in 1898 and for five years longer *641 while the plaintiff’s sister lived in the homestead. In December, 1903, a trust company — the executor of the will'of the plaintiff’s father — caused the household goods of the decedent to be removed to an auction room, where they were advertised to be sold at public sale. The plaintiff’s bureau was removed with this property, presumably, because the executor or its agent supposed that it was part of the decedent’s estate. The plaintiff did not know that the property was removed or sold until a considerable time after the sale. The executor was not her agent or bailee, and had not received any custody of, or control over, the property from her, nor is there anything to show that it ever intended to exercise such control. The removal of it was plainly a mistake. It is not shown who became entitled to the homestead on the death of the plaintiff’s father, but the fact that a sister remained on thé premises until shortly before the auction sale, gives us leave to presume that she was rightfully there and the plaintiff’s right to keep her goods in the dwelling has not been challenged. The only property with which the executor had anything lawfully to do was that belonging to the decedent’s estate. We have not the case of a person who invests one with the apparent ownership and control of property by which another was misled to his prejudice. There is an entire absence of evidence of any act done by the plaintiff which led the defendants to suppose that this property belonged to the estate or that the executor was authorized to sell it. The storage of it in the homestead did not afford any facility for fraud which would not exist in any case of bailment. If every owner of chattels may be met by an estoppel where his property is in a situation which enables a stranger to take possession of it without right and expose it for sale, we shall have a state of the law which will be destructive of many useful methods of business and of valuable property rights. The taking of the bureau by the executor, without the knowledge .or consent of the owner, did not give an appearance of title to the executor. Nor is,the plaintiff to be charged with the consequences of silence or negligence in not acting to prevent the sale. The silence or negligence for which one may be held responsible is that exhibited *642 at a time when it is one’s duty to speak or act; but no such duty existed here, for the plaintiff was not bound to presume that her property would be taken or sold. There is not the slightest evidence that the plaintiff gave the defendants any reason to believe that the property belonged to the executor, or that she had given the latter any express or implied authority to make the sale. Nor is there any evidence of what the learned counsel for the appellants calls “abandonment.” It appears from the evidence that the plaintiff left her goods at her old home because she had no place to which to take them when she went to California, but she is not to lose her property because she does not keep it in her immediate custody. Mere lapse of time does not destroy her right, and even if this were an important fact the defendants were not aware of it and did not buy in view of it.
• The charge of the court does indicate a sympathy with the ■plaintiff, but that was not prejudicial to the defendants'for there was no evidence in the case on which a verdict in their favor could have been properly rendered. In submitting to the jury the question whether the plaintiff fraudulently held out the executor as the owner of the property or whether she ■acted in a way which was careless, negligent or fraudulent in leaving her property in the homestead, the court was more favorable to the defendants than the evidence required. No title was shown by the defendants and the court properly denied their request for binding instructions.
The assignments are overruled and the judgment affirmed.